**Tommy WILLIAMS, Plaintiff–Appellant,**

**v.**

**The NASHVILLE NETWORK and Gaylord Entertainment Company, Defendants–Appellees.**

No. 96–5309.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1997.

Decided Dec. 8, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 22, 1998.

David B. Lyons (argued and briefed), Nashville, TN, Richard McGee (briefed), McGee & Lyons & Balinger, Nashville, TN, for Plaintiff–Appellant.

Kenneth E. Douthat (argued), Kathryn A. Stephenson (briefed), Tuke Yopp & Sweeney, Nashville, TN, for Defendants–Appellees.

Before: CONTIE, RYAN, and BOGGS, Circuit Judges.

## AMENDED OPINION

### PER CURIAM.

Tommy Williams filed suit against the defendants, The Nashville Network ("TNN") and its parent company, Gaylord Entertainment Company, pursuant to Title VII, 42 U.S.C. §§ 2000e to 2000e–17. Williams, a black man, alleged that TNN's failure to interview him for various positions for which he had applied was the result of racial discrimination and/or retaliation for his filing of a complaint with the Equal Employment Opportunity Commission ("EEOC"). He appeals from the judgment entered following a jury verdict in favor of the defendants, contending that the district court abused its discretion in denying his motion for judgment as a matter of law because the jury's verdict was not supported by the evidence. Williams also raises two evidentiary issues and a dispute about the composition of the jury. For the reasons that follow, we will affirm in part and reverse in part.

### I.

In early December 1991, Williams and 107 others applied for an audio engineer position at TNN, a cable television station that features live country music. At the time, Williams was an audio engineer with a public radio station in Nashville; in addition, he was the audio engineer for the Ernest Tubb Midnight Jamboree, a live country music performance broadcast over radio every Saturday night.

TNN's job description for the audio engineer position identified various required duties, consisting principally of operating professional audio equipment for live and taped productions. The job posting authorized by TNN specified the following qualifications:

Minimum two years experience with professional audio systems and equipment. Basic knowledge of music acoustics and electronics. Prior audio production experience required. Television experience desirable.

Peggy Slater, who was employed in the Human Resources division of TNN, reviewed the applications for the audio engineer position, including that of Williams. Slater selected Williams's application and forwarded it, along with 30 others, to Conrad Jones and Jones's supervisor, Fred Harper, the individuals in charge of filling the position. The testimony at trial was that Jones "effectively makes the decision on applicants," although he "passes his choices to Harper."

Jones and Harper selected three applicants for an interview; Williams was not included. According to Jones, he selects only people he knows for interviews, and he did not know Williams. Indeed, Jones personally knew or knew of everyone he interviewed for the position.

The defendants hired Mark Swift, a white man. Swift had a total of eight years and four months of relevant experience. Jones had requested that Swift be hired for the position, based on Jones's work experience with Swift.

About a year later, in December 1992, Williams submitted a new employment application for an audio engineer position with TNN, along with 106 others. The job description for the position was essentially the same as before. Once again, Slater forwarded Williams's application to Jones. Once again, Jones selected five candidates for an interview, and Williams was not among them.

TNN hired Charles Davis, a white man. Davis's experience consisted of less than two years of experience as road manager/monitor engineer with Ricky Skaggs, a country music artist; eight months as road manager/sound engineer in Dallas; six months as sound engineer at Disney World; five months as sound engineer at Busch Gardens; and experience as a performer. Once again, Jones knew Davis personally.

The parties dispute whether Jones and Harper knew that Williams was black, although it is undisputed that Slater knew Williams was black. Both Jones and Harper testified that they had no knowledge of Williams's race, and point out that although the TNN employment application had an optional tear-off portion that allowed an applicant to indicate his race, that portion was removed before the applications were sent to Jones and Harper. Williams suggests, how-

ever, that Jones and Harper must have known him because TNN engineers often attend the Midnight Jamboree, and Jones himself attended the Jamboree during the period of Williams's employment there. It is undisputed, however, that Williams had never introduced himself to Jones.

Williams filed a discrimination charge with the EEOC in February 1993. In September 1994, the EEOC issued its determination concluding that "reasonable cause exists to believe" Williams's allegations. The EEOC concluded that Williams had ten years of experience as an audio engineer and had performed all of the duties listed on the job postings. It further concluded that Williams was more qualified for the positions than either of the two men who were hired.

After filing the EEO complaint, Williams applied in January 1994 for two new audio engineer positions at TNN; it is undisputed that Slater knew of Williams's EEO filing at the time of these applications. According to Slater, the new positions were created because TNN had recently purchased sophisticated equipment involving the use of computers that several employees had been unable to operate, even after training. Thus, the job descriptions were similar to the positions for which Williams had applied earlier, but emphasized the importance of computer experience. Slater testified that she did not forward Williams's applications to the individual in charge of hiring for these positions because she believed that Williams was not qualified for the positions due to a lack of computer experience. Other than this alleged failing, Slater acknowledged that Williams was fully qualified.

Williams, however, presented evidence at trial that he in fact had substantial computer experience, and that Slater knew it. Williams's résumé, which accompanied his application and which was entered into evidence at trial, shows extensive computer experience during his service in the U.S. Army between 1970 and 1975, and shows that he was employed by IBM between 1975 and 1976. Slater testified, however, that she could not "discern from the resume whether [Williams] ha[d] advanced operational skills."

There was evidence that one of the individuals whose application *was* forwarded for interviewing, and who, in fact, received one of the available positions, apparently did not have any computer experience. The application form completed by Mark Shifman, a white male, has a page asking the applicant to indicate his years of experience in a variety of areas. It contains an entry for "personal computer," with specific subcategories for particular software. Shifman's application, which was entered into evidence, is blank next to those entries.

At trial, Ms. Slater changed her reason for not forwarding Williams's application to the interview stage of the hiring process. She stated that he did not have experience with the new high-tech equipment TNN had recently purchased. However, such experience was not listed in the job description, and there is no indication in the record that Mark Shifman had this experience.

The plaintiff filed a complaint in the district court stating claims under Title VII. Based on the rejections described above, Williams stated disparate treatment and disparate impact discrimination claims, as well as a retaliation claim. Following trial, the jury returned a unanimous verdict, finding for the defendants on all issues. The plaintiff filed a motion for judgment as a matter of law or for a new trial, pursuant to Fed. R.Civ.P. 50 and 59, which was denied by the district court. The plaintiff then filed this timely appeal.

## II.

Following the close of evidence, six issues were submitted to the jury: 1) a disparate-treatment Title VII claim; 2) a disparate-impact Title VII claim; 3) a 42 U.S.C. § 1981 civil rights conspiracy claim; 4) a Title VII retaliation claim; 5) the amount of compensatory damages, if any; and 6) TNN's liability for punitive damages. After the jury had deliberated for some period, it informed the court that it had deadlocked; it later developed that the jury had deliberated only as to the first two issues when it announced its deadlock, although the court was not initially made aware of this.

The district court resolved the deadlock by allowing a majority verdict on the liability questions. The court identified two jurors who were in disagreement with the other seven, ordered them discharged, and instructed the remaining seven to return to the jury room and resume deliberations. We observe in passing that the plaintiff does not complain of this method of excusing jurors.

He does complain on appeal, however, that the district court erred in dismissing the two jurors *before* all nine jurors had reached an impasse as to all issues, and that the court's actions violated his Seventh Amendment rights. He argues that the jury might have been willing to reject the first two Title VII arguments while nonetheless accepting his retaliation claim. He contends that "[t]his court cannot assume that the minority jurors would not have prevailed if allowed further deliberation on counts not yet considered by them." What the plaintiff fails to acknowledge is that he explicitly agreed at trial, on several occasions, to proceed with a majority verdict, even after he was aware that the jury had not deliberated as to all of the issues. While he admits that he agreed to a majority verdict, he suggests that his agreement should be ignored, because it was wrongly predicated on assumptions that "the jury was hung on all counts," and that the jury was split in the plaintiff's favor.

As a general matter, we treat issues not properly preserved in the district court as forfeited, and not subject to judicial review. *See Moore v. Holbrook*, 2 F.3d 697, 701–02 (6th Cir.1993). We note, further, that the Federal Rules of Civil Procedure explicitly provide that parties may stipulate to a non-unanimous verdict. Fed.R.Civ.P. 48. Further, a jury of as few as six members is presumptively acceptable. *Id.* Rule 48 strongly suggests, then, that the plaintiff has no basis for arguing that the district court's actions here violated his Seventh Amendment rights. *Cf. Colgrove v. Battin*, 413 U.S. 149, 159–60, 163, 93 S.Ct. 2448, 2454, 2456, 37 L.Ed.2d 522 (1973); *EEOC v. Delaware Dep't of Health & Soc. Servs.*, 865 F.2d 1408, 1420 (3d Cir.1989).

In short, the plaintiff unambiguously and deliberately forfeited his rights to any type of verdict other than a unanimous verdict rendered by seven members of the jury. We can conceive of no reason why the usual forfeiture rule should not apply in this context, *see Fletcher v. McCreary Tire & Rubber Co.*, 773 F.2d 666, 668 (5th Cir.1985); *cf. Smith v. Gulf Oil Co.*, 995 F.2d 638, 645–46 (6th Cir.1993); *United States v. Vega*, 447 F.2d 698, 701 (2d Cir.1971), and the plaintiff certainly has not articulated one.

## III.

Prior to trial, the defendants filed a motion *in limine* seeking to exclude the probable cause determination of the EEOC. During trial, the plaintiff suggested that the report was relevant because the EEOC's "determination is similar to the requirements of the *prima facie* case." The district court rejected that contention, noting that the existence of a *prima facie* case was a question of law, and that the court would instruct the jury as to whether a *prima facie* case had been established. The plaintiff proffered no other basis for admitting the report. The district court then granted the motion under Fed. R.Evid. 403:

I preclude any questions with regard to [the EEOC investigator's] recommendations or conclusions or the determination made by the EEOC or her supervisors. I do so on the grounds that, one, it's not relevant to any issue in this lawsuit; two, if it is relevant, if it has some remote relevance, I find under 403 that its probative value is outweighed by the risk of unfair prejudice, and be [sic] misleading and possibly misleading and confusing to this jury of what a governmental agency made a determination, an administrative reconciliation proceedings versus the standard of proof in this case.

On appeal, Williams argues that the district court abused its discretion in granting the defendants' motion *in limine* to exclude the EEOC report. He contends that there was no appropriate inquiry under Rule 403 as to whether the report would be prejudicial.

Federal Rule of Evidence 403 permits relevant evidence to be excluded "if its

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Evid. 403. The test imposed under 403, then, is a balancing test. *See Cortes v. Maxus Exploration Co.,* 977 F.2d 195, 201 (5th Cir.1992). A district court has "broad discretion to determine matters of relevance," and we review a district court's decision to exclude evidence under Fed.R.Evid. 403 only "for an abuse of discretion that affected the substantial rights of a party." *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 587 (6th Cir.1994). This court has explicitly ruled that it is "within the [sound] discretion [of the district court] whether ... to accept the EEOC's final investigation report" in evidence. *Heard v. Mueller Co.,* 464 F.2d 190, 194 (6th Cir.1972).

A probable cause determination is to be distinguished from an EEOC letter of violation, which is widely considered to be presumptively inadmissible "because it 'suggests that preliminarily there is reason to believe that a violation has taken place' and therefore results in unfair prejudice to defendant." *EEOC v. Manville Sales Corp.,* 27 F.3d 1089, 1095 (5th Cir.1994) (citation omitted), *cert. denied,* 513 U.S. 1190, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995). A probable cause determination, on the other hand, "is more tentative in its conclusions." *Id.*

■ There was no abuse of discretion in the district court's decision to exclude the EEOC letter. A strong argument can be made that a jury would attach undue weight to this type of agency determination, viewing it as a finding of discrimination—as the plaintiff himself suggests it should be viewed—rather than as a mere finding of probable cause. Importantly, too, the plaintiff completely failed to articulate to the district court any persuasive rationale for admitting the document, arguing only that it was relevant to proving the existence of a *prima facie* claim. There being, then, little if any basis for the district court to conclude that the report had any probative value, even a minimal prejudicial effect would merit excluding the report.

## IV.

Another evidentiary challenge was made by the defendants during trial with respect to two witnesses proffered by the plaintiffs, both of whom were black and had unsuccessfully applied for positions as cameramen at TNN. One witness was John Key, who, sometime between 1989 and 1992, went to TNN in order to apply, but "sat around ... for 45 minutes waiting to be talked to, ... waiting for an application, was not given an application, was not given an interview and he left." The second was Willie Moore, who applied for a cameraman position in 1985, but was not interviewed. The defendants argued as follows:

[N]either of the two proposed witnesses that we're talking about applied for any position like Mr. Williams had applied for, the positions are not related in any way, Mr. Williams' application, and any testimony that they might have would not be relevant to this case.... [E]ven if it were relevant the situation would be that the jury may tend to focus more on their situation rather than Mr. Williams'....

The district court agreed:

Well, I find at this point that the evidence is not relevant, it doesn't relate to the position for which the plaintiff applied. It relates to other positions, cameramen positions.

And further, that the first witness proffered, his application is almost, well, it's 1985, and it's rather remote from the period where the plaintiff's first application was submitted in 1991, and at this stage it's irrelevant.

The court suggested, however, that "the testimony might become relevant as a matter of rebuttal." And in fact, the plaintiff offered Key as a rebuttal witness, and Key was permitted to testify. For reasons that do not appear in the record, however, the plaintiff did not again call Moore.

Williams now argues that the district court erred in excluding Moore's testimony. Moore's testimony, Williams contends, was evidence of a pattern and practice at TNN of refusing to interview blacks. Once again, we review a district court's decision to exclude

evidence under Fed.R.Evid. 403 only "for an abuse of discretion that affected the substantial rights of a party." *Black,* 15 F.3d at 587.

In *Schrand v. Federal Pacific Electric Co.,* 851 F.2d 152 (6th Cir.1988), this court considered the district court's admission of testimony of two former employees of the defendant, which the plaintiff alleged had terminated him due to age discrimination, about their own terminations. These employees testified "that they were told they were terminated because they were too old." *Id.* at 155. This court concluded first that the evidence was not relevant, and second that it should have been excluded under Rule 403:

> First, it was not relevant. [The supervisor] who made the decision to terminate [the plaintiff] was not involved in the decision to terminate either [of the former employees]. Neither of the witnesses worked at the time of termination [in the division or region in which the plaintiff worked].... [T]here was no evidence from which the alleged statements of the witnesses could logically or reasonably be tied to the decision to terminate [the plaintiff].... The fact that two employees of a national concern, working in places far from the plaintiff's place of employment, under different supervisors, were allegedly told they were being terminated because they were too old, is simply not relevant to the issue in this case....

We also conclude that the evidence should have been excluded under Rule 403. With no other direct evidence of age discrimination in the case, the impact of the two former employees' testimony would be great. Thus, even if that evidence were relevant, we believe its probative value was substantially outweighed by the danger of unfair prejudice flowing from its admission. Although it had no direct bearing on the issue to be decided—whether [the plaintiff] was discharged because of his age—this testimony embellished the circumstantial evidence directed to that issue by adding "smoking gun" type evidence. It offered an emotional element that was otherwise lacking....

In addition to creating prejudice that substantially outweighed its probative val-

ue, the testimony tended to confuse the issue by focusing the jury's attention on two totally unrelated events, a consideration under Rule 403.

*Id.* at 156.

■ There is no discernible difference between the rationale in *Schrand* and the circumstances present here. Moore's testimony regarding his non-hire had no relevance to Williams's case. Moore applied for a different position, with different qualifications and hiring requirements; he did so six years prior to Williams's application; and different people at TNN reviewed his application. The rejection of Moore's application, therefore, has no apparent connection to that of Williams's application. Further, it does not appear that Moore had any explanation for why he was not hired, beyond rank speculation; he certainly does not suggest that, like Williams, he was not hired because the individual in charge of hiring only hired his cronies. Finally, as in *Schrand,* the testimony would have led to a confusion of the issues, requiring TNN to present testimony explaining why Moore had not been hired.

## V.

Williams argues, finally, that the "evidence at trial does not support the jury's verdict." He disputes the validity of the verdict with regard both to his disparate treatment and disparate impact claims, as well as with regard to the retaliation claim.

With respect, first, to his disparate treatment and disparate impact claims, Williams contends that because Jones, a white male, hired only people he knew or knew of, and because those people were always white males, the plaintiff has proved that "discretionary, subjective criteria are employed to hire at TNN," and that "[w]ho you know is more important than what you know."

■ We review the district court's denial of the plaintiff's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) *de novo. K & T Enterprises, Inc. v. Zurich Ins. Co.,* 97 F.3d 171, 175 (6th Cir. 1996). In a federal question case, the standard of review for a Rule 50 motion based on sufficiency of the evidence is identical to that

used by the district court. The evidence should not be weighed, and the credibility of the witnesses should not be questioned. The judgment of this court should not be substituted for that of the jury; instead, the evidence should be viewed in the light most favorable to the party against whom the motion is made, and that party given the benefit of all reasonable inferences. The motion should be granted, and the district court reversed, only if reasonable minds could not come to a conclusion other than one favoring the movant. *Id. See also Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150, 1152 (6th Cir.1995); *Phelps v. Yale Security, Inc.,* 986 F.2d 1020, 1023 (6th Cir.), *cert. denied,* 510 U.S. 861, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993). The district court must "indulge all presumptions in favor of the validity of the jury's verdict," and "should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result." *Brooks v. Toyotomi Co.,* 86 F.3d 582, 588 (6th Cir.1996) (internal quotation marks and citations omitted).

■ The plaintiff's argument with respect to his disparate treatment and disparate impact claims is without merit. While it is clear that the plaintiff presented a case that properly withstood summary judgment, and that would have been adequate to support a jury verdict in his favor, it is also clear that the defendants presented evidence adequately disputing the plaintiff's claim. The defendants offered evidence that only Slater, Jones, and Harper had influence over the hiring decisions, and while Slater knew of Williams's race, both Jones and Harper testified that they did not—and Slater proposed Williams for further consideration by Jones and Harper. Thus, the jury could reasonably have concluded that there was no racial discrimination in connection with the 1991 and 1992 applications. Although Jones interviewed only people he knew, there is nothing in the evidence to suggest that he was predisposed against black persons, if they had made it a point to introduce themselves and let him know of their interest in particular positions. There is simply nothing impermissible about TNN's hiring only engineers that Jones knows, so long as there is no

evidence of any racial motivation. For these reasons, we find there was sufficient evidence supporting the jury verdict in favor of defendants with regard to the plaintiff's disparate treatment and disparate impact claims.

## VI.

■ However, we believe that Williams's argument with regard to his retaliation claim has merit. Plaintiff Williams argues that there is insufficient evidence to support the jury's verdict in favor of defendants in regard to his retaliation claim, because the company did not offer a legitimate, non-retaliatory reason for not forwarding to the second stage of the hiring process plaintiff's application for the position posted in January 1994, after he had filed his EEOC complaint.

■ To establish a *prima facie* case of retaliation, the plaintiff had to demonstrate that: (1) he engaged in protected activity; (2) an adverse employment decision occurred; and (3) there was a causal connection between the protected act and the adverse employment decision. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997). Once a *prima facie* case is established, the burden of producing some non-discriminatory reason falls upon the defendant. *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987). If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation. *Id.*

■ When a case has been fully tried on the merits, as this one has, the adequacy of a party's showing at any particular stage of the burden-shifting process is not the primary issue in reviewing a motion for a judgment as a matter of law. Rather, the appellate court reviewing a Rule 50 motion looks to see if the record contains evidence upon which a reasonable trier of fact could have concluded as the jury actually did. *Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115, 118 (5th Cir.1993). Therefore, we must ask whether there was sufficient evidence for a reasonable finder of fact to conclude that the official reasons given for not forwarding the plain-

tiff's resume were legitimate, or whether, even when all reasonable influences are drawn in favor of the defendants, a reasonable juror could conclude only that the company's proffered reasons were pretextual.

To prevail on a retaliation claim, plaintiff Williams needed to present evidence of a causal connection between his EEOC charge and his failure to be hired in connection with his subsequent applications. Williams presented the following in regard to his application for the position he applied for in January 1994 after filing the EEOC complaint. Before his EEOC complaint, Ms. Slater had always forwarded Williams's application for further consideration at the interview stage of the hiring process, because he had superior qualifications which met the requirements listed in the job description. After he filed the EEOC complaint, Ms. Slater did not forward his application for the January 1994 position, stating that Williams did not meet the requirements listed in the job description, which were different from those required for the positions he had applied for previously. First, Ms. Slater stated plaintiff lacked computer experience. When this proved false, she stated he did not have experience on the type of new high-tech equipment used for the job.

Williams presented the following evidence to rebut these proffered reasons and to demonstrate that they were pretextual. He submitted to the jury a copy of the job description for the January 1994 position, a copy of his application for the January 1994 position with his resume attached, and a copy of Mark Shifman's application for the same position. Mark Shifman was ultimately hired for the job. As plaintiff's attorney pointed out in closing argument, these documents indicate that contrary to Ms. Slater's assertions, plaintiff met all the requirements listed in the job description, whereas Mark Shifman did not. Plaintiff demonstrated that one of Ms. Slater's proffered reasons (lack of computer experience) was contrary to fact. He demonstrated that Ms. Slater's second reason (lack of experience with high-tech equipment) was not one of the listed job requirements, and moreover, that Mark Shifman, the person who was ultimately hired for

the job, did not indicate he had such experience. In spite of the fact that the plaintiff met the requirements listed in the job description and Mark Shifman did not, Ms. Slater forwarded Mark Shifman's application for further consideration, but did not forward the plaintiff's. At trial, Slater testified that she had before her and considered both Williams's application and his resume, and based on that information, she had determined that he was unqualified. This explanation is not worthy of belief, and no reasonable jury could have so found. With respect to Shifman, his application was the only testimony entered into evidence (and there was no indication that either side was denied access to any additional material), and questioning developed the same information as provided on the application, but no more. Therefore, there is no indication that any of the following facts were actually true.

a. Shifman actually had computer experience or experience with the new high-tech equipment.

b. There was any additional paperwork, such as a resume, which indicated that he did.

c. There was any other reason that Slater should have believed, or even asserted that she believed, that Shifman had such experience.

Thus, there is no factual support in the record for Ms. Slater's statements about why she did not forward the plaintiff's resume after he filed the EEOC complaint.

We believe the only reasonable conclusion to be drawn is that Ms. Slater's proffered reasons for not forwarding Williams's application after he filed an EEOC complaint were pretextual. Plaintiff offered uncontested evidence that conclusively refuted the company's proffered reasons for not forwarding his employment application, thus leaving the company with no legitimate business reason to explain why the plaintiff's resume had always been forwarded before he filed the EEOC complaint, but was never forwarded after he filed the EEOC complaint. Because the company offered no legitimate business reason that a reasonable juror could credit, we believe that the plaintiff must prevail on his retaliation claim. Giving full deference to

the jury's verdict and viewing all record evidence and any reasonable inferences to be drawn therefrom in the light most favorable to the defendants, we conclude, as a matter of law, that a juror could reasonably conclude only that the company's proffered reasons for not forwarding the plaintiff's application were pretextual. Given plaintiff Williams' otherwise superior qualifications, unless he lacked experience in a particular area, there would be no reason, other than retaliation, not to forward his resume. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (employee must prove "*both* that the reason was false, *and* that discrimination was the real reason"). We therefore reverse the district court and grant the plaintiff's motion for judgment as a matter of law in regard to the retaliation claim pursuant to Fed.R.Civ.P. 50.

### VII.

To conclude, the district court is **AFFIRMED** in part and **REVERSED** in part. The district court's denial of the plaintiff's motion for judgment as a matter of law in regard to the discrimination claims is **AFFIRMED**. The district court's denial of the plaintiff's motion for judgment as a matter of law with regard to the retaliation claim is **REVERSED**. As a matter of law, plaintiff Williams should be awarded judgment on his retaliation claim, and the case is **REMANDED** to the district court for proceedings consistent with this opinion.