Sandra L. DAVIS, Plaintiff,

v.

FIDELITY TECHNOLOGIES CORPORATION, and Harold Loeblein, Defendants.

No. Civ. 92–2091–H/BRO.

United States District Court, W.D. Tennessee, Western Division.

March 3, 1998.

**630**

Hite McLean, Jr., Law Offices of Hite McLean, Jr., Memphis, TN, for Sandra L. Davis, plaintiff.

Frederick J. Lewis, Lewis Fisher Henderson & Claxton, Memphis, TN, Louis P. Britt, III, McKnight Hudson Ford & Harrison, Memphis, TN, for defendants.

Harriett M. Halmon, U.S. Attorney's Office, Memphis, TN, for John Blaine, miscellaneous.

## OPINION AND ORDER

HORTON, District Judge.

### REFERENCE TO MAGISTRATE JUDGE FOR REPORT AND RECOMMENDATION ON REASONABLE ATTORNEY FEE

In this action, Plaintiff charges Defendants with retaliating against her by failing to hire her or recommend that she be hired in violation of Title VII of the Civil Rights Act of 1964. Plaintiff claims Defendants' actions were in retaliation for her filing EEOC charges against her former supervisor, Defendant Harold Loe-

blein, who happened to be the site manager in charge of hiring for Plaintiff's prospective employer, Defendant Fidelity Technologies Corporation (Fidelity).

Having considered all the evidence presented during six days of trial and the record before the Court, the Court finds that Defendants unlawfully retaliated against Plaintiff, Sandra Davis, by failing to hire her or recommend that she be hired because of the sexual harassment charges she had previously filed with the EEOC against her former supervisor, Loeblein, and her former employer.

### BACKGROUND

From July 1, 1985, through December 31, 1990, Sandra Davis was employed by Cubic Defense Systems (Cubic) as an electronics technician at the Millington Naval Air Station (MNAS). (Tr. 11) Cubic was a government contractor responsible for maintaining flight simulators and other electronic training equipment for the Department of the Navy. (Ex. 17 at 23) Pursuant to the MNAS contract, Cubic classified its electronics technicians into three distinct categories based on their levels of expertise. (Ex. 19 at 27–30) The entry level electronics technician positions were classified as Technician I (Tech I) jobs. *Id.* Technician II (Tech II) positions required more skill and knowledge than the Tech I positions while the Technician III position (Tech III) was the most skilled electronics technician position. (Ex. 17 at 84) As the skill level of the positions increased so did the wages and benefits. (Ex. 19 at 27–30)

While at Cubic, Ms. Davis was employed as a Tech II and worked under the supervision of Harold Loeblein. (Tr. 11) In January 1989, Ms. Davis complained to Cubic's site manager, Dave Windsor, that Loeblein was making unwelcome sexual comments to her. (Tr. 15) These comments ranged from remarks about Ms. Davis' physical appearance to Loeblein requesting that Ms. Davis accompany him to

a hotel. (Tr. 13, 14, 87; Ex. 17 at 93) When Loeblein's inappropriate behavior did not cease, Ms. Davis again spoke with Dave Windsor about Loeblein's conduct. (Ex. 4; Tr. 16) Ms. Davis finally filed a formal complaint with the EEOC on March 15, 1989 charging Loeblein with sexual harassment. (Ex. 3).

After filing her complaint, Ms. Davis was assigned to a different supervisor and Loeblein was demoted; however, he continued to make distasteful comments to Ms. Davis and made unwelcome physical contact with her. (Ex. 4). Moreover, after Ms. Davis filed her EEOC charge, site manager David Windsor reassigned her to the night shift, and one day required Ms. Davis to repeatedly scrub baseboards and mop the floor. (Tr. 17) These were tasks that no other technicians were required to perform and "job duties" that, until she filed the EEOC charge, Ms. Davis had never been required to perform. (Tr. 17, 18) As a result of Loeblein's continued harassment and Windsor's treatment of her, Ms. Davis filed a second formal EEOC complaint on April 27, 1989, in which she alleged that she was being retaliated against for having filed the formal sexual harassment charge against Loeblein and Cubic. (Tr. 17)

Subsequent to the filing of Ms. Davis' second EEOC charges against Cubic and two of its management personnel, a Cubic home office representative traveled to Memphis from California to investigate Ms. Davis' charges. (Tr. 18) As a result of the representative's findings and Loeblein's failure to remove a sexually explicit computer program from the computer at his work station, Loeblein was terminated by Cubic in late August 1989. (Tr. 22, 23)

Cubic's contract to maintain the electronic training equipment at MNAS was due to expire on December 31, 1990. (Ex. 17 at 103) When the contract was put out for bid in late 1990, a number of companies in addition to Fidelity submitted bids. (Ex. 17 at 32) In October 1990, Fidelity was awarded the MNAS contract and hired Harold Loeblein as its site manager to reward him for the work he had done for Fidelity in assisting to win the contract away from Cubic. (Ex. 17 at 26 –30) As Fidelity's site manager, Loeblein was responsible for "all phases of the employment process: sourcing, screening, conducting the interview and hiring." (Ex. 30).

Pursuant to an agreement that had been worked out by the two companies prior to Fidelity being awarded the MNAS contract, Fidelity subcontracted with Daedalean to provide six full-time technicians who would work under Loeblein's direction and supervision. (Ex. 30; Ex. 17 at 39) Daedalean's representative at the Millington site was Paul Patterson who, like Loeblein, was a former employee of Cubic. (Ex. 17 at 15) Patterson and Loeblein had worked in concert to win the MNAS contract away from Cubic. (Ex. 19 at 55; Ex. 17 at 19, 30–34).

In late October and early November 1990, Loeblein, on behalf of Fidelity and Patterson, on behalf of Daedalean, conducted interviews together to fill positions for the new contract. (Ex. 17 at 123). Due to Loeblein's familiarity with the work to be performed, Paul Patterson deferred to Loeblein's hiring recommendations. (Ex. 19 at 89, 99) Significantly, Patterson interviewed and hired only those persons recommended by Loeblein. (Ex. 17 at 82, 90)

Knowing that her position with Cubic would come to an end with the expiration of Cubic's contract on December 31, 1990, Ms. Davis expressed an interest in being hired to work on the MNAS contract for Cubic's successor. (Tr. 25) Loeblein contacted Ms. Davis by phone and notified her that she was scheduled for an interview on October 31, 1990. (Tr. 26) Ms. Davis appeared for the interview at a Memphis motel where she briefly talked to Harold Loeblein and Daedalean employees Paul Patterson and Shirley Robson. (Tr. 34) During the course of the perfunctory "in-

terview" primarily conducted by Loeblein, Ms. Davis indicated her desire to obtain a position as an electronics technician at the MNAS. (Ex. 17 at 124) Loeblein summarily advised Ms. Davis that he was aware of her qualifications and instructed her to fill out an employment application. (Tr. 89) Ms. Davis completed the application for a position with Fidelity on which she indicated that her salary requirement was "negotiable". (Ex. 17 at Ex. 1). Unlike the other prospective employees interviewed by Loeblein and Patterson, Ms. Davis was not then or ever advised that if she wanted to be considered for a position with Daedalean she had to submit a separate application. (Tr. 148) After her interview, Ms. Davis contacted Fidelity's home office in Pennsylvania on seven separate occasions from November 12, 1990, through February 5, 1992, to inquire about the status of her application. (Ex. 5, Tr. 37– 39) She was repeatedly informed that resumes and applications were kept in active status for five years. (Tr. 39)

During the initial hiring phase of Fidelity's new contract, Loeblein hired two Tech II's: Donald Hollar and Calvin McKinley to work directly for Fidelity. (Ex. 12) Daedalean hired three Tech II's: Jackie L. Bartlett, Kevin J. Biekert and Kathleen P. Slone, all of whom were former Cubic employees and whom, according to Loeblein were better qualified than Ms. Davis. (Ex. 17 at 114, Ex. 35) Paul Patterson hired Bartlett, Biekert and Slone based solely on Loeblein's recommendation. (Ex. 17 at 82) Prior to recommending the Daedalean employees to Patterson, Loeblein did not review any of their written performance evaluations. (Ex. 17 at 115) During the initial hiring phase, if Loeblein did not recommend that a particular individual be hired by Daedalean that individual was not hired. (Ex. 17 at 82). Loeblein did not recommend Ms. Davis to Daedalean nor was she provided the same paperwork, including a W–4 form, that all other applicants who interviewed at the Memphis motel were given. (Tr. 34, 35; Ex. 17 at 116–121)

After her interview on October 31, 1991, Ms. Davis was never formally advised by Fidelity that her application for employment had been rejected. (Tr. 149) She discovered that she would not be hired by Fidelity when she happened to answer the phone while at work at Cubic. (Tr. 148, 149) Loeblein had called Cubic to talk to someone other than Ms. Davis, when Ms. Davis answered the phone and recognized Loeblein's voice, she inquired about the status of her application. *Id.* Loeblein informed Ms. Davis during that chance telephone conversation that she was not going to be hired by Fidelity. *Id.*

On January 1, 1991, Fidelity took over operations from Cubic at the MNAS. (Ex. 17 at 103) Pursuant to their agreement during the bidding phase of the contract, Fidelity subcontracted with Daedalean to provide technical employees to perform the work under the contract. (Ex. 19 at Ex. 2) In May 1991, Daedalean filed bankruptcy and withdrew from the MNAS contract. (Ex. 17 at 51, 52) All but one of Daedalean's employees who were working on the MNAS contract were hired by Fidelity and continued working without interruption. (Ex. 17 at 153, 154) About the time Daedalean withdrew from the contract, Fidelity removed Harold Loeblein as site manager and replaced him with Joe Russell. (Ex. 17 at 134) Defendant Loeblein was moved to a position as a Tech III with Fidelity and had no further role in Fidelity's employment decisions. (Ex. 17 at 153) Joe Russell was also a former Cubic employee who was a personal friend of Harold Loeblein's. (Ex. 17 at 103). Russell was aware that Ms. Davis had filed EEOC charges against Loeblein and Cubic. In fact, Russell had discussed the charges with Loeblein while they were both still employed by Cubic.

On January 7, 1991, after Ms. Davis was laid off by Cubic, she filed an EEOC charge against Fidelity and Daedalean claiming that she was not hired as an electronics technician by either company in

retaliation for having previously filed EEOC charges against Loeblein, Windsor and Cubic.

After being laid off by Cubic, Ms. Davis sought employment in her field of electronics and on November 4, 1991, was hired by STRON International at the MNAS. (Tr. 40, 108) Ms. Davis was hired by STRON as a "C Tech", the equivalent of a Tech I and was then promoted to a "B Tech", the equivalent of a Tech II. (Tr. 41, 55) After working for STRON for approximately two years, Ms. Davis was laid off due to a reduction in force. (Tr. 55) Ms. Davis once again searched for employment as an electronics technician but after several fruitless months she accepted a lowerpaying non-electronics position as a computer programmer with Data Cash Register Company where she was still employed at the time of trial. (Tr. 40, 41)

Ms. Davis contends that Fidelity and Loeblein discriminated against her by refusing to hire her or recommend that she be hired by Daedalean in retaliation for her filing EEOC charges against Loeblein and her former employer, Cubic. Ms. Davis also claims that after the initial hiring phase, Fidelity continued to retaliate against her by hiring individuals less qualified than her.

Fidelity and Loeblein contend that there is no causal connection between Ms. Davis' filing of the EEOC charges and their failure to hire her or recommend to Daedalean that she be hired. Defendants proffered several reasons for not hiring Ms. Davis or recommending that she be hired including: her inexperience on certain types of equipment; her work record while at Cubic; her failure to send a resume to Daedalean; her failure to reapply or continue to express interest in being hired by Fidelity after filling out the application on October 31, 1990; and defendant's interpretation of certain Department of Labor guidelines.

## LEGAL ANALYSIS

■ In order to establish liability in a Title VII retaliation case, Plaintiff must demonstrate that: she engaged in a protected activity; an adverse employment decision occurred; and that there was a causal connection between the protected activity and the adverse employment decision. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once the plaintiff has established the foregoing elements, a prima facie case of discrimination is made and the burden of producing some non-discriminatory reason for the adverse employment decision falls upon the defendant. If the defendant articulates a legitimate non-discriminatory reason for the adverse employment action, the plaintiff then assumes the burden of showing that the reason given by the defendant was pretextual and false. In addition, the plaintiff must prove that retaliation was the real reason for the adverse action. *Williams v. Nashville Network and Gaylord Entertainment Co.,* 132 F.3d 1123 (6th Cir.1997) (per curiam).

■ Applying the foregoing legal framework to this case, the Court finds that Ms. Davis filed a formal discrimination charge with the EEOC on March 15, 1989, charging her supervisor Harold Loeblein with sexually harassing her. Prior to filing the formal EEOC charge, Ms. Davis had advised site manager Dave Windsor on three separate occasions of Loeblein's distasteful and offensive conduct. (Ex. 4) Windsor was non-responsive to Ms. Davis' complaints. (Tr. 16, 20) As a result of the EEOC charge, Loeblein was demoted and removed as Ms. Davis' supervisor, yet he continued to make inappropriate remarks to Ms. Davis and tried to force physical contact with her. (Ex. 3, Tr. 16, 17) Immediately following the EEOC's onsite investigation of Davis' sexual harassment charges, and after an investigation by the home office representative from California, Loeblein was terminated by Cubic in August, 1989. (Tr. 18, 23)

After Ms. Davis filed the sexual harassment charge against Loeblein, site manager, Dave Windsor began treating her differently. (Tr. 121) On one particular day, Windsor required Ms. Davis to repeatedly scrub the baseboards and mop the floors at work. (Tr. 17, 18) No other Tech II was required to perform such duties and prior to her filing the EEOC charge, neither was Ms. Davis. *Id.* After filing the EEOC charge, Ms. Davis was required to check in and out when going to lunch which she had not previously been required to do. (Tr. 18) Ms. Davis was also taken off day shift and reassigned to night shift. (Tr. 20) As a result of Windsor's conduct, Ms. Davis filed a second EEOC charge on April 27, 1989 alleging that she was being retaliated against by Dave Windsor for having filed a sexual harassment charge against Loeblein and Cubic.

The Court finds that Plaintiff engaged in a protected activity when she filed EEOC charges against Loeblein, Windsor, and Cubic. As Fidelity's site manager and agent, Harold Loeblein's failure to hire Ms. Davis or recommend that she be hired by Daedalean constitutes adverse employment action. The Court finds that Loeblein's adverse employment action taken against Ms. Davis was a result of her having filed EEOC charges that led to Loeblein being terminated by Cubic. The Court further finds that Fidelity, through its employees, including Joe Russell, continued to retaliate against Ms. Davis by failing to consider her for employment after the initial hiring phase was completed.

■ Upon determining that Ms. Davis has made out a prima facie case of discrimination, the Court must determine whether the defendants articulated a legitimate non-discriminatory reason for failing to hire Ms. Davis or recommend that she be hired. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Loeblein's testimony was that Ms. Davis was not hired or recommended because she did not fit the criteria for the available positions and in his opinion, was not the best candidate for the job. Loeblein also testified that he did not consider Ms. Davis for a Tech I position because his interpretation of the Department of Labor regulations prevented him from hiring a former Tech II to fill a Tech I position. At trial Defendants also claimed that they did not know Ms. Davis was still interested in a job with Fidelity after she went to work for STRON.

Continuing its analysis, the Court finds that Defendants articulated several non-discriminatory reasons for their failure to hire Plaintiff or recommend that she be hired. At this juncture the Court does not consider the truth or validity of the defendants' proffered reasons. Pursuant to the shifting burdens set forth in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and its progeny, Ms. Davis must now prove by a preponderance of the evidence that the reasons given by the defendants were false and that the real reason they did not hire her was in retaliation for her filing EEOC charges against her former supervisor and employer.

Loeblein testified that Bartlett, Biekert, and Slone were all better qualified than Ms. Davis to perform the Tech II jobs for Daedalean. After a thorough review of the record, however, the Court is persuaded by a preponderance of the evidence that those individuals hired as Tech IIs by Daedalean were no better qualified than Ms. Davis. The Court specifically credits the testimony of Mr. Curtis Park who served as the assistant contracting officer for Cubic and then Fidelity on the MNAS contract. Mr. Park testified that he was familiar with Ms. Davis' work at Cubic and that he would not hesitate to hire her as a Tech II. Mr. Park explained that the 15G13 was the major device on the MNAS contracts and that the 15G13 consisted of three major systems: the SPN–42, the TPX–42, and the simulator. Ms. Davis was the only technician of those hired by either Daedalean or Fidelity who was cer-

tified on the SPN–42 automatic carrier landing system. (Ex. 20, 21) She also had on-the-job training on the TPX–42 and the simulator.

Dave Windsor's written performance evaluations of Ms. Davis from September 1985 through February 1987, established that: Ms. Davis' quality of work "conformed to high standards of quality required in training device maintenance"; that she "consistently performed at a high productivity level"; was "highly receptive to new ideas and improvements" and that with respect to job knowledge, she was "highly competent". In addition, Windsor noted that Ms. Davis was "prompt and punctual" and that she was "a fine team worker". (Ex. 11) In an overall summary dated February 11, 1986, the site manager noted that Ms. Davis "contributed to team upgrading through the instructional assistance particularly in SPN–42 area." *Id.*

Accordingly, based on Ms. Davis' written performance evaluations by her supervisors prior to filing the first EEOC charge, Park's testimony, Ms. Davis' certifications, and the record as a whole, the Court finds Loeblein's testimony that Ms. Davis did not meet the criteria and that she was less qualified than those employees who were hired, not credible.

Fidelity contends that it did not consider Ms. Davis for employment after the initial hiring phase of the contract because she did not reapply or otherwise express her interest to Joe Russell, Loeblein's successor as site manager. The Court finds that this excuse for failing to hire Ms. Davis is without merit. Ms. Davis was repeatedly advised by Fidelity representatives that her resume and application would be held in an active status for five years. Based on those representations by Fidelity's home office, Ms. Davis did not file a second application. (Tr. 125) The Court finds that Fidelity was also made aware that Ms. Davis was still interested in obtaining employment on or about March 30, 1992, when it was served with the Complaint. Ms. Davis' Complaint alleges that Fidelity

"continues to refuse me employment." (Docket entry, No. 1).

The Court also finds that Fidelity and Harold Loeblein have made inconsistent representations to the EEOC concerning the reasons that Plaintiff was not hired by Fidelity or recommended for hiring by Daedalean. For instance, Loeblein testified that he did not recommend Ms. Davis for hiring by Daedalean because, "she did not fit the criteria and wasn't the best qualified person for the job." (Ex. 17 at 114) Yet, he made the following representation to the EEOC: "to the best of my knowledge she never applied for employment with Daedalean." (Ex. 26) In addition, Loeblein advised one of the EEOC investigators that he did not hire any Tech IIs who were former Cubic employees to work for Fidelity. (Ex. 17 at Ex. 6) Yet the record clearly shows that former Cubic employee, Donald Hollar was hired and went to work for Fidelity as a Tech II. (Ex. 24) These inconsistencies and shifting positions taken by the defendants are further evidence that their proffered reasons for failing to hire the plaintiff or recommend her for hiring are pretextual. *Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160 (6th Cir.1996).

After thoroughly considering all of the evidence presented during six days of trial, listening to and observing the demeanor of the witnesses and considering the record as a whole, the Court finds that Ms. Davis established by a preponderance of the evidence that the defendants unlawfully discriminated against her by failing to hire her as a Tech II or recommend that she be hired. The Court is convinced that the real reason Ms. Davis was not hired by Fidelity or its sub-contractor Daedalean was because she had previously filed EEOC charges, including a sexual harassment charge, against Loeblein, Windsor and her former employer. The Court further finds that Fidelity continued to unlawfully discriminate against Ms. Davis by failing to consider her for employment because of the EEOC charges even after Joe

Russell assumed the position of site manager in May 1991. The Court finds the conduct of Harold Loeblein reprehensible, but declines to impose personal liability. The court finds that at all times material to this case, Loeblein was acting as Fidelity's agent.

 Having established a violation of Title VII, Ms. Davis is entitled to back pay and a position with Fidelity. The Court finds that Ms. Davis met her duty to mitigate damages and used reasonable diligence to seek and find other employment. Because it is impossible to reconstruct the exact hours worked each week by Fidelity employees based on the documents produced by Fidelity, the Court will resolve any doubts against Fidelity and Loeblein and award Ms. Davis back pay equal to the maximum amount she could have earned based on other employees' earnings. *Wooldridge v. Marlene Industries Corp.,* 875 F.2d 540 (6th Cir.1989).

Mrs. Davis testified that based on the annual earnings of Donald Hollar, who was hired as a Tech II by Fidelity, she would have earned approximately $220,656.40 at Fidelity from January 1, 1991 through December 31, 1996, but for Defendants' discriminatory refusal to hire her. During that time period, Ms. Davis has received $86,481.94 in non-overtime earnings from other employers. She is therefore entitled to back pay in the amount of $134,174.46 which represents the difference in what the plaintiff earned and what she could have earned if she had been hired by the defendants. Plaintiff is also entitled to prejudgment interest on the amount of back pay awarded in accordance with 28 U.S.C. § 1961(a).

Fidelity is also ordered to reinstate Ms. Davis to the first available position with pay and benefits equal to that of a Tech II. Until Ms. Davis is offered such a position, Fidelity is ordered to pay Ms. Davis front pay at the rate for a Tech II, plus benefits minus Ms. Davis' interim earnings from her present employment. If reinstatement to the position of a Tech II is not feasible

then Fidelity is ordered to pay Ms. Davis front pay for a period of three years. The front pay will be calculated based on the rate of a Tech II, plus benefits minus Ms. Davis' interim earnings from her present employment. The Court finds three years of front pay equitable under all of the circumstances. *Shore v. Federal Express Corp.,* 42 F.3d 373 (6th Cir.1994).

As the prevailing party, Ms. Davis is entitled to recover a reasonable attorney's fee and costs. Counsel for Ms. Davis has not presented the Court with sufficient factual evidence upon which to make a determination of reasonably appropriate legal fees; therefore, the Court refers the matter of attorney fees to the United States Magistrate Judge for the purpose of a report and recommendation thereon. However, if the parties can resolve the fee issue, the proceeding before the Magistrate Judge will be unnecessary.