Chander N. AHUJA, Plaintiff–Appellant,

v.

Richard DANZIG, Secretary of the Navy, Defendant–Appellee.

No. 00–4223.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 2001.

Decided July 10, 2001.

Before MANION, DIANE P. WOOD, WILLIAMS, Circuit Judges.

655

## ORDER

Chander Ahuja sued the Secretary of the Navy for age discrimination under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. 621, and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, after the Navy hired a younger woman instead of him as a social worker at one of its family services centers. The district court granted summary judgment in favor of the Navy, concluding that Ahuja presented no evidence under the indirect burden-shifting test that the Navy's proffered reason for not hiring him was pretextual. Ahuja appeals and we affirm.

The Navy operates a family services center (the "Center") on its naval training center ("NTC") located in Great Lakes, Illinois. In April 1995 the Navy contracted with Kathleen Rettinger, who was in her thirties, to perform general family counseling services at the Center. Additionally, on an as-needed basis Rettinger performed domestic violence interviews and worked as a case manager for the Center's Family Advocacy Program ("FAP"), which was specially designed to address domestic violence problems. Rettinger already had extensive domestic violence counseling experience; before she came to the Center, she was a domestic violence counselor at the NTC Red Cross working in conjunction with FAP. Rettinger also had served as a member of the FAP Case Review Subcommittee, which determines whether domestic violence has occurred in the cases presented to it and, if so, which treatment group should get the referral. Rettinger co-founded two of the primary treatment groups to which FAP referred patients.

In April 1995 the Navy also contracted with Ahuja's company for general family counseling services at the Center. Ahuja, who was in his sixties, performed the same general counseling as Rettinger but, unlike

Rettinger, was not authorized to work for FAP. If Ahuja encountered a domestic violence situation, he was required to refer it to FAP.

In October 1995 the Navy announced an opening for a social worker position at the Center. The job description listed domestic violence counseling as the first major duty, and the successful candidate would devote at least seventy-five percent of his or her time to counseling. The parties agreed when briefing the summary judgment motion that training in domestic violence counseling was essential to the job, and that general experience in social work would be insufficient training for domestic violence assessment and counseling.

Ahuja and Rettinger were the only two eligible applicants considered. Ahuja's application showed that he had approximately thirty years' experience in social work but did not reflect any specific clinical experience in domestic violence counseling. Rettinger's application showed she had many fewer years' experience in social work but included a detailed description of her experience in domestic violence counseling.

At the time these events took place, Lieutenant Christine Stiles ran the Center and was responsible for hiring. Because Stiles was not trained as a social worker, she relied on Kathleen Neville, the Center's Chief of Counseling, to make a recommendation. Neville had supervised both candidates when they performed contract work for the Center and reviewed how they processed their cases. Neville also was familiar with Rettinger's domestic violence counseling experience because they had worked together on FAP's Case Review Subcommittee.

Neville reviewed the applications and recommended Rettinger. Neville testified at her deposition that she recommended Rettinger based on her past experience in domestic violence counseling, including her

work at FAP. Neville also testified by affidavit that Rettinger was better suited to deal with domestic violence issues because her experience was in domestic violence counseling while Ahuja's experience was "general."

Stiles followed Neville's recommendation without conducting interviews and offered the job to Rettinger, who accepted. Though Stiles originally testified that she made her decision based on Neville's recommendation and the applications, she later testified that she also considered training certificates and recommendation letters contained in Rettinger's contract file that Rettinger had not attached to her application.

Stiles told Ahuja of her decision in May 1996. In August 1996 Ahuja filed a formal complaint, which the Navy accepted for investigation and which was referred to the Equal Employment Opportunity Commission. An EEOC Administrative Law Judge recommended a finding of no discrimination, which the Navy adopted. Ahuja then filed this lawsuit.

The district court granted summary judgment to the Navy. Ahuja had not presented any direct evidence of discrimination but instead had attempted to prove discrimination under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting method. The court concluded that Ahuja established a prima facie case of discrimination (a finding the Navy does not challenge) and that the Navy had satisfied its burden of articulating a legitimate non-discriminatory reason for not hiring Ahuja – that Rettinger was more qualified. The court decided that Ahuja failed to present any evidence that could discredit the Navy's proffered reason for not hiring him. The court reasoned that Stiles's consideration of documents in Rettinger's contract file and Stiles's decision not to inter-

view were not evidence of pretext because Stiles ultimately considered the same information for both candidates, and Ahuja could not identify anything in his own contract file that would have established he was more qualified.

In our de novo review we evaluate the evidence in the light most favorable to Ahuja and draw all inferences in his favor. *Jordan v. Summers*, 205 F.3d 337, 341 (7th Cir.2000). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The *McDonnell Douglas* framework requires a three-part inquiry: (1) the claimant must establish a *prima facie* case of discrimination; (2) the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the claimant must prove that the employer's proffered reason is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802–804, 93 S.Ct. 1817. On appeal, the only issue in the present case is pretext. Pretext means a lie – that the defendant's articulated non-discriminatory reason for not hiring the plaintiff is phony and that the defendant did not honestly believe it. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001); *Wolf v. Buss Am., Inc.*, 77 F.3d 914, 919–20 (7th Cir.1996). On appeal, Ahuja contends that the district court erred by failing to consider the totality of his evidence, the cumulative effect of which, he argues, creates an issue of fact as to pretext. He relies in particular on (1) the fact that his qualifications, he says, were far superior to Rettinger's; (2) the fact that Stiles and Neville allegedly afforded Rettinger "deferential treatment" by looking beyond the "four corners" of her applica-

tion materials to her contract file while refusing to interview either candidate; (3) inconsistencies in the testimony of Stiles, Neville, and the Center's Deputy Director, Arnold Oskin; (4) the fact that Stiles hired women to fill nine of ten job openings at the Center; and (5) the fact that three men who worked at the Center filed either gender or age discrimination charges against Stiles.

■ We quickly dispense with Ahuja's argument that he was more qualified than Rettinger. It is well-settled that Ahuja's own belief that he was the better candidate is irrelevant to the question of pretext; only the perceptions of the decision-maker matter. *Mills v. First Fed. Sav. & Loan Ass'n. of Belvidere*, 83 F.3d 833, 843 (7th Cir.1996); *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir.1994). Had Ahuja's qualifications in domestic violence counseling been clearly superior to Rettinger's, he might have been able to raise an issue of fact as to pretext, *see, e.g., Williams v. Nashville Network*, 132 F.3d 1123, 1132 (6th Cir.1997), but Ahuja presented no such evidence.

■ We also reject Ahuja's contention that Stiles and Neville afforded Rettinger's application an unfairly deferential review. Treating one person's application more favorably than another can in some contexts support a finding of pretext, *see Allen v. Muriello*, 217 F.3d 517, 521 (7th Cir.2000); *Lam v. Univ. of Hawaii*, 164 F.3d 1186, 1188 (9th Cir.1998), but Ahuja was not treated differently. Stiles and Neville reviewed the same information for both candidates. Ahuja does not contend that they applied higher standards to his application, or that they ignored anything favorable in his contract file. Rather, he complains that Stiles did not do enough to discover his experience in domestic violence counseling because she did not conduct interviews. Under the circumstances, however,

Stiles's decision not to interview is not suspect. The decision was non-discriminatory – Stiles did not interview Rettinger either. *Cf. Williams*, 132 F.3d at 1131 (decision-maker's decision to interview only people he knew was not suspect in the absence of any evidence of racial motivation; decision-maker also interviewed those who introduced themselves and expressed interest in the position). More importantly, Stiles was not required to discover Ahuja's experience; Ahuja was obligated to state it in his application, which he failed to do. *See Ghosh v. Indiana Dept. of Envtl. Mgmt.*, 192 F.3d 1087, 1092 (7th Cir.1999).

 Neither do any discrepancies in witness testimony support a finding of pretext in this case. Ahuja highlights three discrepancies: (1) Neville testified that she knew of Rettinger's training because she had to approve all employee training, but Rettinger's training preceded the date on which Neville began approving Rettinger's training requests; (2) Stiles testified that she consulted with Oskin who recommended Rettinger but Oskin testified that he was not involved in the selection process; and (3) Stiles eventually admitted that she relied on documents in Rettinger's contract file that Rettinger did not include in her application contrary to Stiles's earlier testimony that she relied only on the application materials. We agree that a jury can conclude that an employer's proffered reasons are pretextual if the employer's testimony contains such inconsistencies as to call into question the employer's overall veracity, *see Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1422 (7th Cir.1992), but here none of the claimed inconsistencies raise doubt as to the sincerity of Stiles's claim that Rettinger was better suited to the job. Regardless of Oskin's participation in the decision-making process, it is undisputed that Stiles relied on Neville's recommendation, which Ahuja concedes was based on Neville's past working relationship with Rettinger. Whether Neville specifically approved Rettinger's training does not change this fact. Similarly, the fact that Stiles considered documents extraneous to Rettinger's application does not alter the facts that Stiles considered the same information for both applicants, that Ahuja never told Stiles or Neville of any specific experience he possessed in domestic violence counseling prior to Stiles's decision to hire Rettinger, and that the general social work experience reflected in Ahuja's application was insufficient for the job of domestic violence counseling. Ahuja cannot prevent summary judgment merely by generally questioning Stiles's and Neville's credibility. *See Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 456 (7th Cir.1991); *cf. Stalter v. Wal–Mart Stores, Inc.*, 195 F.3d 285, 291 (7th Cir.1999) (question of fact existed as to pretext where employer's story fundamentally changed between the time of the adverse employment decision and the time of the administrative proceeding).

██ As for Ahuja's "statistical evidence" (that Stiles hired women for nine of ten job openings), it is not probative because it is incomplete; it is a raw number that does not show disparate treatment between comparable individuals, excluding any information about the qualifications of the applicants, their age and gender, or the total number of applicants. *See Swanson v. Leggett & Platt, Inc.*, 154 F.3d 730, 734 (7th Cir.1998); *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1140 (7th Cir.1998); *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 465 (7th Cir.1986).

 Last, Ahuja's vague assertion that three other men filed discrimination complaints is not evidence of discriminatory intent as to Ahuja. Although evidence of prior discriminatory conduct can support an inference that subsequent conduct

was discriminatory, *see Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1112 (7th Cir.1998), past discrimination is not probative when it is not temporally (or otherwise) linked to subsequent allegations of discrimination, or when the evidence that the employer was guilty of the past discriminatory conduct is weak and disputed, *see Campbell v. Ingersoll Mill. Mach. Co.,* 893 F.2d 925, 929 (7th Cir.1990). The record reveals no link between Ahuja's claim and the past discrimination charges against Stiles and no evidence that Stiles actually discriminated in those instances.

We thus conclude that Ahuja's argument that the district court erred by treating his evidence of pretext in a piecemeal fashion rather than viewing the totality of the evidence lacks merit. We recognize that each piece of circumstantial evidence "standing alone" need not be sufficient to support a finding of discrimination, *see Futrell v. J.I. Case,* 38 F.3d 342, 350 (7th Cir.1994), but the evidence at least must be probative of discrimination, *see Huff v. UARCO, Inc.,* 122 F.3d 374, 385 (7th Cir.1997). That was not the case here; the district court did not refuse to consider synergies among several probative pieces of evidence because most (if not all) of Ahuja's evidence was not probative in the first place. As this court has stated before, "[a]dding together a string of nothings still yields nothing." *Testerman v. EDS Technical Prod. Corp.,* 98 F.3d 297, 306 (7th Cir.1996) (citation omitted).

AFFIRMED.