Carolyn COVINGTON, Plaintiff–Appellee,

v.

MCI WORLDCOM NETWORK SERVICES INC. Defendant–Appellant.

No. 01–6139.

United States Court of Appeals, Sixth Circuit.

March 26, 2004.

Before BOGGS, Chief Judge; GUY, Circuit Judge; and HOOD, District Judge.*

PER CURIAM.

Carolyn Covington brought this action against her former employer. MCI World-com Network Services ("MCI"), claiming race, sex, and age discrimination in refusing her a promotion. The jury found in her favor as to sex discrimination only. Defendant MCI WorldCom Network, Inc. ("MCI") appeals from the district court's denial of its motion for judgment as a matter of law or for a new trial, on the grounds that the verdict was based on insufficient and/or inadmissible evidence, and in the alternative seeks remittitur and alteration of the awards granted by the jury and trial judge. For the following reasons, we remand for a new trial as to liability.

* The Honorable Denise Page Hood. United States District Judge for the Eastern District of Michigan, sitting by designation.

## I

Covington entered MCI's employ as a manager at the Memphis, Tennessee Call Center (the "Memphis Center") in 1991. In 1992, she transferred to the Memphis Center's Customer Calling Department, where she reported to David Watson, the manager in charge of that department. When Watson was promoted to Regional Manager, Covington applied for his vacated former position. Four other employees, all male, also applied for that position. After interviews in November 1993. the promotion went to a junior manager named Mark Shelby. MCI's lead witness, former Center Manager Mark Anderson, testified that he had promoted Shelby rather than Covington because Shelby displayed terrific leadership potential in his interview, setting forth a big-picture vision for the department's future under his management, and Covington did not. Covington sued because she did not get the promotion.

We review the denial of MCI's motion for judgment as a matter of law *de novo,* using the same standard as did the district court. *Williams v. Nashville Network,* 132 F.3d 1123, 1130–31 (6th Cir.1997). That is, we affirm if there is a "legally sufficient basis for a reasonable jury to find for" Covington. Fed.R.Civ.P. 50(a)(1). We do not weigh the evidence, nor make credibility determinations; rather, we view the evidence in the light most favorable to Covington, giving her the benefit of all reasonable inferences, and we reverse only if reasonable minds could find only for MCI. *Williams,* 132 F.3d at 1130.

As usual at this stage, we do not review plaintiff's prima facie case, but only whether Covington proved discrimination. *Roh*

v. *Lakeshore Estates, Inc.*, 241 F.3d 491, 498 (6th Cir.2001). Once MCI proffered an explanation for promoting Shelby rather than Covington, Covington had to prove that MCI's proffered justification was a mere pretext for intentional sexual discrimination. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Covington could meet her burden by showing that MCI's justification (1) was not based in fact, (2) did not actually motivate MCI, or (3) would not suffice by itself to motivate MCI's action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir.1994).

If the jury disbelieved MCI, it could justly infer that the true motive was discriminatory, even without positive evidence of discriminatory motive. *Ibid.; Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957(1978) ("when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration"). But because plaintiff bears the burden of proof, a jury's mere credibility determination unsupported by any evidence of falsity cannot support a verdict for plaintiff. *Reeves*, 530 U.S. at 147–48, 120 S.Ct. 2097. Covington had to present some evidence going squarely to falsity.

## II

■ MCI posted the position vacated by Watson as "Senior Manager, Customer Calling." Covington and Karl Amelang, the Memphis Center's then-Human Resources Manager, testified as to the meaning of the title "Senior Manager." Managers at MCI progressed in compensation level from Manager I to Manager II, Manager III, and finally Senior Manager. At each promotion, a manager's performance was reviewed and his or her compensation was increased accordingly. Covington testified that promotions came with seniority and satisfactory performance. Amelang testified more precisely that, as of 1993. MCI's Generic Job Summary for Senior Manager rank required nine to ten years related experience, including five years of supervisory experience.

Significantly, Amelang testified that Covington, a Manager III who had over five years of supervisory experience with various employers, was qualified to apply for the post vacated by Watson. Amelang also testified that Shelby did not have the years of experience required by the Generic Job Summary for even Manager III rank.[1] In fact, Covington had been an MCI manager longer than any other candidate for the post. Shelby, in contrast, was a Manager I, and had been a manager for only nine months.

MCI urges that Title VII does not demand that a company promote by seniority. It is true that a trial court does not "sit as a super-personnel department" in Title VII cases to second-guess the wisdom of an employer's standards. *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir.2004) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir.1995)). But Covington is not saying that the jury could impose standards upon MCI. Rather, she offered evidence that in MCI's own opinion, Shelby did not have the requisite experience for the post, so

---

1. The Generic Job Summary apparently allows an employee's educational degrees to substitute for experience, but as the record does not show how this apparent rule might apply to Shelby, we decline to read a caveat into Amelang's clear testimony.

that MCI's proffered explanation was likely to be false.

MCI insists, however, that Shelby's ineligibility for Senior Manager status was irrelevant. Anderson testified on cross-examination that he had posted the job as "Senior Manager. Customer Calling." merely because Watson had been a Senior Manager, and to discourage applicants from outside the Memphis Center. But he never considered being a Senior Manager to be a requirement for the job. Senior Manager, MCI asserts, is a compensation description, not a job requirement.

There is considerable evidence that "Senior Manager" designated an experience requirement in this instance. Covington's and Amelang's testimony points that way. Anderson's own testimony. that he used the phrase to discourage some prospective applicants also necessarily implies that he expected the phrase to look like a requirement. Moreover, Anderson identified the position as "Senior Manager" in MCI's official log of the promotion process, and in a trial affidavit, and yet he did not give Shelby what he now says is only a compensation title. Instead, he gave Shelby the title of "Segment Manager," a title unfamiliar to Covington and to Anderson's successor. The jury could readily infer that Anderson made up the title "Segment Manager" because Shelby did not have the seniority to be a Senior Manager but needed a similar-sounding title to lend him the authority associated with his new responsibilities.

MCI contends that the jury could not infer that Anderson considered substantial experience to be a job requirement if Anderson testified that he did not. We disagree. A decision-maker's self-interested testimony about his own thoughts is not unassailable; direct evidence of discriminatory intent is hardly ever available, so a plaintiff generally resorts to circumstantial evidence to show what the decision-maker had in mind. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). Covington produced evidence reasonably implying that Senior Manager eligibility was a prerequisite for the post, and evidence that Shelby was not eligible to be a Senior Manager. These points reasonably imply that Shelby was disqualified for the post, and thus that MCI's explanation was false.

We do not say that an employer can avoid trial only by blindly adhering to the terms of a job posting he created before the applicant field was known. Businesses do not and cannot work that way. An employer who claims he re-prioritized his original standards because no applicant perfectly fit the bill cannot be assumed to be lying. Such a claim would be an integral part of his required explanation of his decision, which the plaintiff must then prove false using independent evidence. But if an employer at trial describes his standards and his decision-making process in a way that is flatly inconsistent with his own prior statements, he may be impeached thereby. Covington satisfied her slight burden of proof.

### III

■ In the alternative, MCI urges that much of Covington's evidence was so prejudicial as to require a new trial. In particular, MCI challenges Covington's testimony as to an incident in September 2003. She testified that Shelby (then her co-worker) made misogynist remarks to her. including: "women should be at home raising babies, they have no place in the workforce;" "women can't compete with young men in the workplace;" and "women are too emotional." Covington complained to her then-supervisor Watson, who brushed these comments off as "a guy thing."

By this testimony, Covington sought to prove that MCI's promotion decision was tainted by sexual stereotyping. Shelby and Watson's comments, she contends, lend context to interview notes taken by Anderson during the promotion process. According to these notes. Anderson was very impressed by Shelby's focus and lack of distractions. Although the notes do not mention it. Anderson knew that Shelby was childless, and knew Covington's son had recently been diagnosed with severe kidney disease and received a transplant. Covington concludes that Anderson improperly stereotyped her as a primary care-giver, whose workplace commitment could not be relied upon. *See Nev. Dep't of Human Resources v. Hibbs,* 538 U.S. 721, 123 S.Ct. 1972, 1979 n. 5, 155 L.Ed.2d 953 (2003) (noting prevalent stereotype that "women's family duties trump those of the workplace"); *see also Los Angeles Dep't of Power and Water v. Manhart,* 435 U.S. 702, 707, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) ("employment decisions cannot be made on the basis of mere 'stereotyped' impressions about the characteristics of males or females").

We review the denial of MCI's motion for a new trial for abuse of discretion, reversing only if we are firmly convinced that the district court made a clear error of judgment. *Barnes v. Owens–Corning Fiberglas Corp.,* 201 F.3d 815, 820–21 (6th Cir.2000). The district court could have granted a new trial because the verdict was so against the weight of the evidence as to be unreasonable, the damages award was excessive, or the verdict was influenced by bias or prejudice or was otherwise unfair. *Conte v. General Housewares Corp.,* 215 F.3d 628, 637 (6th Cir.2000). We ask whether the challenged evidence was clearly admitted improperly, and if so, whether its introduction was harmless er-

ror, that is, whether we can say with "fair assurance," that it did not substantially affect the verdict, considering the weight of all the evidence on that issue and the centrality of the issue to the verdict. *Schrand v. Federal Pacific Elec. Co.,* 851 F.2d 152, 157 (6th Cir.1988) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557(1946)).

Testimony as to Shelby and Watson's alleged comments should have been excluded. Evidence shall be excluded if irrelevant; and may be excluded if it is if much more prejudicial than relevant. Fed.R.Evid. 402, 403. There was no probative value to the comments, because they could not support an inference of discriminatory intent by MCI. Derogatory remarks by an immediate supervisor with meaningful influence on an employment decision may sometimes imply discrimination in the decision process. *Wells v. New Cherokee Corp.,* 58 F.3d 233, 238 (6th Cir. 1995). But Shelby was not Covington's supervisor and had no influence on the decision. Watson could be considered a contributor to the promotion process, because he helped Anderson interview Covington and Shelby and discussed the decision with Anderson, and because Shelby's promotion was announced in a memo sent under Watson and Anderson's names. But Watson did not somehow adopt Shelby's remarks by saying "it's a guy thing." *See Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 n. 2 (6th Cir.1986) (evidence that age-discrimination plaintiff's supervisor once said "[d]on't categorize me in that with you." in response to third-party's remark that "we old timers know the procedure," properly excluded as irrelevant and prejudicial). A single "[i]solated and ambiguous" remark unrelated to a suspect decision cannot establish discrimination. *Phelps v. Yale Sec., Inc.,* 986 F.2d 1020,

1025 (6th Cir.1993).[2] Moreover, there is no apparent nexus between Watson's alleged misogyny and Anderson's private notes, so the one cannot explain the other.

The evidence was highly prejudicial, because this sort of irrelevant, apparent "smoking gun" can win a discrimination case. Thus, in *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759–60 (6th Cir.2000), we reversed because the district court had admitted testimony as to graphic racial insults by co-workers of plaintiff's own rank. Similarly, in *Schrand*, 851 F.2d at 156–57, we remanded for a new trial because plaintiff's most powerful evidence was that two co-workers had been told by their supervisors that they had been fired because of age: because those supervisors did not influence plaintiff's own termination, this evidence was unfairly prejudicial.

That the material was not merely potentially, but actually, prejudicial is strongly suggested by the fact that the jury found discrimination only on the basis of sex (rather than race or age). These inflammatory comments were nearly the only evidence going to sexual discrimination in particular–nothing else even purported to connect Anderson's notes to his supposed concerns about Covington's home life, nor was there evidence that MCI would not have had such concerns about the commitment of a male employee with a gravely ill child. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 448, 452 (2d Cir.1999) (jury may not infer that extremely negative assessment of black tenure candidate was *ipso facto* based upon racial animus). Therefore, we are firmly convinced that the verdict was substantially swayed by this material.

■ We review the remaining challenged evidence only to the extent necessary to provide guidance on remand. Covington's counsel recited, from an email that Covington wrote when laid off in a June 1994 reduction in force, that Covington's discharge was a violation of her "civil rights" which she, "as a black female over 40," would not stand for, and that she had documentation of things that "weren't right" over the "last few months" preceding June 1994. Counsel cursorily questioned Amelang about these statements, purportedly in order to impeach Amelang's testimony that Covington had not previously complained about discrimination in the November 1993 promotion process. But Amelang's testimony did not open the door to vague accusations about later events; the email, or his acknowledgment that it existed, could not conceivably refute his prior testimony. The effect of counsel's recitation of plaintiff's own later, unrelated opinions must have been to make Amelang look like a liar, and to make Covington look persecuted. The relevance was nil, and the material was prejudicial.

## IV

For the reasons stated, we affirm the denial of MCI's motion for judgment as a matter of law, reverse the denial of MCI's

---

**2.** In *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir.1994), cited by the dissent, we upheld the admission of derogatory remarks, unrelated to the decision-making process, made by a person other than the decision-maker. But those remarks were made by the CEO of the company, a person who unquestionably set the tone for all lesser managers. That CEO consistently repeated his derogatory remarks over a period of years, strongly suggesting the creation of an unspoken corporate policy. *Cooley*, 25 F.3d at 1331–32. Moreover, we did not positively hold that even such strong indicia of bigotry at a high level proved discrimination by the decision-maker, we merely refused to find that admission was an abuse of discretion in the context of an otherwise-strong plaintiff's case. *Id.* at 1332–33.

motion for a new trial as to liability, and remand for further proceedings in accordance with this opinion.

HOOD, District Judge, concurring in part and dissenting in part. I concur in the majority's finding that Covington satisfied her burden of proof that MCI's proffered explanation for promoting Shelby rather than Covington was a mere pretext for intentional sexual discrimination. I disagree with the majority's finding that the testimony as to Shelby and Watson's alleged comments should have been excluded as irrelevant and highly prejudicial.

As noted by the majority, Covington testified that Shelby, prior to his promotion to Segment Manager, made discriminatory comments to her, including: "women should be at home raising babies, they have no place in the workforce;" "women can't compete with young men in the workplace;" and "women are too emotional." Covington testified she and other employees complained to Watson about Shelby's comments who responded with, "[i]t's a guy thing."

The majority cites *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir.1993) for the proposition that a single isolated and ambiguous remark unrelated to a suspect's decision cannot establish discrimination. Since the *Phelps* case, this Court has taken a closer look at discriminatory remarks and has set out a more comprehensive analysis than that made in the *Phelps* case to determine if such remarks should be admitted into evidence. In *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir.1994), an age-discrimination case, this Court acknowledged the *Phelps* case but went on to engage in a further analysis of the statement made in that case. This Court noted that although comments were made not in the context of the plaintiff's

termination and that the comments were made years prior to the termination, "the accumulated testimony is going beyond the vague, ambiguous, and isolated comments that have been held insufficient to support an age-discrimination claim." *Cooley*, 25 F.3d at 1333. The comments were attributed to decision makers. related to the decision-making process, and quoted by co-workers who had discussions with Cooley's superiors during the course of their employment. *Id.*

In *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir.1998). this Court set forth a two-step process to analyze whether a remark should be admitted into evidence. The first step is to look at the identity of the speaker and whether a reasonable jury could conclude that the speaker was in a position to influence the decision to terminate an employee. *Id.* at 355 (*citing Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 347–48 (1st Cir.1998))(statement by head of human resources who "participated closely" in plaintiff's termination was admissible to show a discriminatory atmosphere.). Although, as the majority writes, the original comments were spoken by Shelby, a non-decision maker in the promotion. Covington testified she complained to Watson, the Senior Manager, about Shelby's comments. Watson brushed off her complaints stating it was a "guy thing." These statements then are Watson's who participated in the interviewing process and whose name appeared in a memo announcing Shelby's promotion. As the majority found, there was sufficient evidence from which a reasonable jury could conclude that Watson was involved in the employment decision not to promote Covington.

The second step is to examine the substance of the remark to determine its relevancy to a plaintiff's claim that an impermissible factor motivated the adverse

employment action against the plaintiff. *Ercegovich,* 154 F.3d at 355. "Although we believe a direct nexus between the allegedly discriminatory remarks and the challenged employment action affects the remark's probative value, the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant." *Id.* "[W]hen assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus." *Id.* at 356.

In this case, the comment by Watson, in response to complaints about Shelby, is relevant. Watson at the time of the interviews had knowledge of the comments made by Shelby. It could be argued by Covington that Watson shared Shelby's views based on his response that it was a "guy thing" and because he failed to do anything about Shelby's comments. Although the majority does not find Anderson's (Center Manager and a decision maker) interview notes connected his supposed concerns about Covington's home life to Watson's comments, I find that Covington could argue that Anderson's interview notes, coupled with Watson's comments, show that Covington's gender was an issue in their promotion decision. Anderson's notes indicated that Shelby had a "stronger commitment" and had "no distractions." By themselves, these notations would not be probative of gender discrimination. However, Covington submitted evidence that Anderson was aware that Covington's child was gravely ill. In addition to this cited testimony and evidence, there was other sufficient evidence to show Shelby's promotion was motivated by gender bias. As noted by the majority, the position title was changed from "Senior Manager" to "Segment Manager." Covington could argue that the change in title, which was unfamiliar to others at MCI, was changed in order to accommodate Shelby's lack of experience for promotion to a Senior Manager position. Covington was more experienced and had received awards for her management skills and for exceeding sales goals, which Covington properly argued contradicted Anderson's interview notes that Covington was "not focused on goals or sales."

I respectfully disagree that the testimony by Covington about the statements made by Shelby and Watson was not relevant and that the material was highly prejudicial. I would affirm the district court's denial of MCI's motion for judgment as a matter of law and motion for a new trial as to liability.